```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
ANALISA RODRIGUEZ,                                          :
                                                            :
                              Plaintiff,                    :   **MEMORANDUM DECISION AND**
                                                            :   **ORDER**
              - against -                                   :
                                                            :   17-CV-01577 (BMC)
STUDENT ASSISTANCE CORPORATION                              :
  and NAVIENT SOLUTIONS, INC.,                              :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brings this case under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. She alleges that beginning in June or July 2015 and continuing through August 2016, defendant debt collection companies frequently called her on her cell phone in connection with an outstanding balance, despite her repeated requests to stop. Defendants have moved for summary judgment, arguing, in part, that plaintiff provided contractual consent to receive their calls. For the below reasons, defendants' motion is granted.

## BACKGROUND

Beginning in January 2005, plaintiff sought to obtain student loans to enroll in college. Plaintiff signed promissory notes for four loans, one each on January 3, 2005, January 10, 2005, October 4, 2005, and February 8, 2007. The January 10, 2005 loan (the "Federal Loan") was issued under the Federal Family Education Loan Program ("FFELP") and is a federally guaranteed loan. On or about June 1, 2010, all of the loans, except for the Federal Loan, were charged off.

Defendants Student Assistance Corporation ("SAC") and Navient Solutions, LLC f/k/a Navient Solutions, Inc. ("NSL") are student loan servicing companies. SAC is an affiliate of NSL. Prior to a series of corporate reorganizations, NSL was known as Sallie Mae, Inc. Defendants called plaintiff many times to collect past amounts due on the Federal Loan.

Plaintiff describes defendants' calls as beginning early in the morning and continuing through the evening. The calls were so frequent that plaintiff installed a "blocking" application on her phone, in an attempt to stop defendants from contacting her. However, defendants circumvented the application by calling her with different numbers. Although she is uncertain of the exact date, beginning in May or June 2015, and throughout that summer, plaintiff "continuously" orally told defendants to stop calling her.

In 2012, plaintiff was a class member in a class action against Sallie Mae, Inc., captioned Arthur v. Sallie Mae, Inc., No. C10-0198 (W.D. Wash.). The amended complaint sought monetary and injunctive relief under the TCPA, alleging that Sallie Mae had made collection calls to some eight million class members without those class members having provided any form of express consent to be called. The class, as certified for settlement purposes, consisted of "[a]ll persons to whom, on or after October 27, 2005 and through September 14, 2010, Sallie Mae, Inc. or any other affiliate or subsidiary of SLM Corporation placed a non-emergency telephone Call to a cellular telephone through the use of an automated dialing system and/or an artificial or prerecorded voice." Plaintiff had received such calls on her student loans during this period; there is no dispute that she was a member of the class.

The district court approved a settlement of the class action by Order entered September 17, 2012. The terms of the settlement provided that plaintiff had until July 3, 2012 to opt out of the class. Under the terms of the settlement agreement, Sallie Mae provided the opportunity for

class members to receive monetary relief, and agreed to change its collection practices at issue in that case. Plaintiff received notice of the settlement on April 13, 2012 and did not opt out. The Arthur settlement went into effect on September 17, 2012.

As to practice changes, Sallie Mae agreed to not call any class member who executed a "Revocation Request." The motion to approve the settlement explained:

> Specifically, for Settlement Class Members who execute a valid and timely request ("Revocation Request"), Sallie Mae shall not make use of, nor knowingly authorize anyone acting on its behalf to make use of, automated calls to their cellular telephones. The Revocation Request will revoke Sallie Mae's ability to make automated calls to their cellular phones. Approximately 75,268 Class Members have already taken advantage of this relief by submitting a Revocation Request form to the Settlement Administrator. If any Class Member chooses not to submit a Revocation Request, the Parties agree that Sallie Mae may contact such persons at any phone numbers reflected in the relevant records.

(internal citations omitted). The settlement agreement provided, "I understand that Sallie Mae, Inc. and any other affiliate or subsidiary of SLM Corporation may call me, or continue to call me, concerning my account(s) by automated dialing system and/or an artificial or prerecorded voice message at any telephone number in their records." Plaintiff did not execute a Revocation Request.

As to monetary relief, Sallie Mae agreed to pay into a fund designated for distribution to class members who submitted a valid and timely Claim Form within 165 days of the preliminary approval of the settlement. The settlement agreement estimated that, dependent upon the number of claims, class members would likely receive an award of between $20 and $40. Although she was given an opportunity to receive a portion of the Arthur settlement proceeds, plaintiff did not file a Claim Form.

The Arthur settlement also contained a provision stating that it was subject to changes in application of the TCPA: "To the extent Congress, the FCC or any other regulatory authority

3

promulgates different requirements under the TCPA, or any other law or regulation that would govern any conduct affected by the Amended Settlement, those laws and regulatory provisions shall control."

## DISCUSSION

In Reyes v. Lincoln Auto. Fin. Servs., 861 F.3d 51 (2d Cir. 2017), the Second Circuit addressed the question of whether a consumer can unilaterally revoke consent to be contacted under the TCPA. There, the plaintiff completed a lease application for a car. The lease application contained a provision that expressly allowed the lessor to contact the plaintiff. After he stopped making payments on the lease, plaintiff received collection calls. Plaintiff requested that he stop receiving calls. When the calls continued, plaintiff filed suit, claiming that the lessor had violated the TCPA by continuing to call him after he had revoked consent to be contacted.

Noting "that the TCPA does not expressly permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent," the Court declined to "read such a provision into the act." Id. at 56. Instead, Reyes held that under the common law of contracts, it "is clear that consent to another's actions can become irrevocable when it is provided in a legally binding agreement…in which case any attempted termination is not effective." Id. at 57 (internal quotations and citations omitted). In Reyes, the plaintiff had not "provided [his consent] gratuitously; it was included as an express provision of a contract." Id. The Court held that "[u]nder such circumstances, 'consent,' as that term is used in the TCPA, is not revocable." Id.

In reaching this conclusion, the Second Circuit distinguished between the kind of consent granted in the case before it, and consent "not given in exchange for any consideration, [] which is not incorporated into a binding legal agreement." Id. at 57. The Court held that the latter kind

4

of consent "may be revoked by the consenting party at any time."

The instant case presents the former scenario, *i.e.*, plaintiff received consideration in exchange for her consent. She did not have to accept it. She could have opted out of the settlement agreement. She could have executed a Revocation Agreement. By choosing not to do either, she can no more maintain this action than she could start a new one against Sallie Mae for the conduct that formed the basis of the allegations in the class action. See In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 129 (2d Cir. 2011) ("Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so."); Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007) ("A settlement agreement is a contract that is interpreted according to general principles of contract law. Once entered into, the contract is binding and conclusive." (internal citations omitted)).

Plaintiff relies on a 2015 FCC ruling, In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7993-94 (2015) (the "2015 FCC Ruling"), for the proposition that "a caller may not limit the manner in which revocation may occur." She claims that the 2015 FCC Ruling applies because the Arthur settlement carved out an allowance for future FCC rulings.

Reyes effectively rejected this argument. It held that the 2015 FCC Ruling only applied where the consumer had not received consideration for having granted permission to the debt collector to call her. The 2015 FCC Ruling, the Court noted, "considered a narrow question: whether the TCPA allows a consumer who has freely and unilaterally given his or her informed consent to be contacted" to later revoke that consent. Reyes, 861 F.3d at 56. As the Second Circuit ruled, revoking gratuitously-provided consent is fundamentally different from revoking bargained-for consent.

5

Plaintiff was offered the opportunity to participate in a settlement, and by not declining, she accepted the chance to take money, and consented to receive calls about her outstanding loans, just like any other class member.  Had plaintiff submitted a Revocation Request, defendants would have lost the contractually granted right to contact her.  But she did not, and that right was bargained-for consideration that she could not unilaterally revoke.  Plaintiff cannot now complain about conduct that she expressly agreed to by not opting out of the class action settlement.

## CONCLUSION

Defendants' motion for summary judgment is granted.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 6, 2017

U.S.D.J.